UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ERNESTO CUANETL and FRANCISCO
HUERTERO, *on behalf of themselves and
others similarly situated,*

                          Plaintiffs,

                -against-

CAFÉ H INC.,
  d/b/a CASA ENRIQUE,
ONE KID CORPORATION,
  d/b/a CAFÉ HENRI,
  COSME AGUILAR, LUIS AGUILAR, and
  WINSTON KULOK,

                          Defendants.
--------------------------------------------------------X
POLLAK, Chief United States Magistrate Judge:

**REPORT AND
RECOMMENDATION**
21 CV 04316 (CBA)(CLP)

On August 2, 2021, plaintiffs Ernesto Cuanetl ("Cuanetl") and Francisco Huertero

("Huertero") (collectively, "plaintiffs") commenced this collective action against Café H Inc.

d/b/a Casa Enrique ("Casa Enrique"), One Kid Corporation d/b/a Café Henri ("Café Henri"),

Cosme Aguilar, Luis Aguilar, and Winston Kulok ("Kulok") (collectively, "defendants"),

seeking compensation for unpaid minimum and overtime wages, spread-of-hours premiums,

liquidated damages, interest, and attorney's fees and costs under the Fair Labor Standards Act

("FLSA") 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL").  Plaintiffs also seek

statutory penalties pursuant to the NYLL for defendants' failure to provide plaintiffs with wage

notices and wage statements.

Despite proper service, defendants failed to file an answer or respond to the Complaint.

On December 2, 2021, the Clerk of the Court issued a Certificate of Default against the

defendants.  (Lee Decl.[1] ¶ 9).  On December 23, 2021, plaintiffs moved for default judgment, and the District Court referred the motion to the undersigned to prepare a Report and Recommendation.  (ECF No. 19).

For the reasons that follow, this Court respectfully recommends that plaintiffs be awarded damages in the amount of $97,245.14.

## FACTUAL BACKGROUND

Casa Enrique and Café Henri are restaurants located in Long Island City, New York. (Compl.[2] ¶¶ 7, 8).  Plaintiffs allege that both restaurants operated as a single, integrated enterprise and that the defendant corporations were engaged in interstate commerce, with gross annual revenues in excess of $500,000 for all relevant time periods.  (Id. ¶¶ 12, 40, 42).  Plaintiff Cuanetl claims to have worked in the restaurants from May 2018 to January 2020.  (Id. ¶ 29). Plaintiff Huertero claims to have worked in the restaurants from March 2019 to November 2019. (Id. ¶ 30).  Both plaintiffs claim to have worked as food runners.  (Id. ¶¶ 29, 30).

Plaintiffs allege that defendant Kulok was the owner, principal, and chief operator of both corporations during their employment with defendants.  (Id. ¶ 9).  In this capacity, Kulok was responsible for all matters related to employees' wage rates, methods of pay, hours worked, and he had the power to hire and fire employees.  (Id.)  According to plaintiffs, defendant Cosme Aguilar was a co-owner of Café Henri, as well as head chef of the restaurant.  (Id. ¶ 10). Plaintiffs claim that Cosme Aguilar also had control over the employees' wage rates and methods of pay and hours worked, as well as the power to fire and hire employees.  (Id.)

---

[1] Citations to "Lee Decl." refer to the Affirmation of C.K. Lee filed with the Court on December 23, 2021, ECF No. 20.

[2] Citations to "Compl." refer to plaintiff's Collective Action Complaint, filed on January 28, 2020, ECF No. 1.

Plaintiffs further allege that defendant Luis Aguilar was a co-owner of Casa Enrique and general manager of Café Henri, with control over the employees' wage rates and methods of pay and hours worked, as well as the power to hire and fire employees.  (Id. ¶ 11).

In the Complaint, plaintiffs assert causes of action for failing to pay minimum and overtime wages under the FLSA and NYLL, failing to pay spread-of-hours premiums under the NYLL, and failing to provide proper wage statements and wage notices pursuant to the NYLL. (Id. ¶¶ 39-59).

On August 18, 2021, plaintiffs served Café Henri and Casa Enrique by serving a copy of the Summons and Complaint upon the Authorized Agent for service in the Office of the New York Secretary of State.  (ECF No. 17, Exs. A, B).  On September 9, 2021, plaintiffs also served the individual defendants Cosme Aguilar, Luis Aguilar, and Kulok at the defendant restaurants. (ECF No. 17, Exs. C, D, E).

On December 2, 2021, the Clerk of Court entered a default against the defendants.  (ECF No. 18).  On December 23, 2021, plaintiffs filed the instant motion for default judgment, which was subsequently referred to the undersigned for a Report and Recommendation.  (ECF No. 19).

DISCUSSION

I.     Default Judgment

    A.  Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  Id.
Second, after the Clerk of Court enters a default against a party, if that party fails to appear or
otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default
judgment.  See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an "extreme
sanction[,]" it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277
(2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of
cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its
calendar," it has held that the district court must balance that interest with its responsibility to
"afford[] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at
95-96.  Thus, considering the "oft-stated preference for resolving disputes on the merits[,]"
default judgments are "generally disfavored[,]" and doubts should be resolved in favor of the
defaulting party.  Id.  Accordingly, plaintiffs are not entitled to a default judgment as a matter of
right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F.
Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with
extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether
to grant a default judgment, including:  (1) whether the grounds for default are clearly
established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants
on notice, see Fed. R. Civ. P. 54(c) (stating a "default judgment must not differ in kind from, or
exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05
CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not
violated in awarding damages that accrued during the pendency of a litigation, so long as the

4

complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for entering the default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiffs have been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants.  See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012).

The burden is on the plaintiffs to establish their entitlement to recovery.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability.  See id.  For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

> B.    Default Judgment Liability

In this case, plaintiffs allege that defendants violated the FLSA and the NYLL by failing to pay overtime and minimum wages, spread-of-hours premiums, and by failing to provide plaintiffs with proper wage notices and wage statements.  (Compl. ¶¶ 58, 59).

> 1)    FLSA Claims

To establish a claim under the FLSA, plaintiffs must prove the following:  that (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiffs are "employees" within the meaning of the FLSA; and (3) the

employment relationship is not exempted from the FLSA.  Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing 29 U.S.C. §§ 206(a), 207(a)); see also Tony & Susan Alamo Found.  v. Secretary of Labor, 471 U.S. 290, 295 (1985).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . .  whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

In their Complaint, plaintiffs allege that corporate defendants Café Henri and Casa Enrique have been and continue to be employers engaged in interstate commerce within the meaning of the FLSA.  (Compl. ¶¶ 7, 8, 13, 14, 39, 40, 41).  Plaintiffs further allege that the corporate defendants have had annual gross revenues in excess of $500,000 at all relevant times. (Id. ¶ 42).  Thus, plaintiffs have adequately alleged that defendants Café Henri and Casa Enrique are covered enterprises under the FLSA.

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" "includes to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or

in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. § 206(a).

Plaintiffs allege in their Complaint that they worked for the defendants as food runners. (Compl. ¶¶ 15, 29, 30, 41). Plaintiffs also allege that the individual defendants held managerial positions in the defendant corporations and exercised operational control over the businesses. (Id. ¶¶ 9-12). Thus, based on the allegations in the Complaint, plaintiffs qualify as "employees" and defendants as "employers" under the FLSA. The Court does not find any basis for exempting the employment relationship at issue from coverage under the FLSA.[3]

Plaintiffs allege that defendants violated the FLSA by failing to pay overtime wages for hours worked in excess of 40 hours per week and by failing to pay proper minimum wages for the hours worked by plaintiffs. (Id. ¶¶ 31-34). Additionally, plaintiffs allege that defendants violated the FLSA by claiming tip credit allowances despite 1) failing to provide proper tip credit notice, 2) failing to provide proper wage statements indicating tip credit allowances, 3) failing to accurately keep track of daily tips earned and corresponding records, and 4) claiming tip credit for all hours worked even though employees engaged in non-tipped duties for "hours exceeding 20% of the total hours worked each workweek[.]" (Id. ¶ 31). Since defendants have defaulted, the Court accepts plaintiffs' uncontested allegations as true, and respectfully recommends that plaintiffs be deemed to have sufficiently set forth the necessary elements to state a claim under the FLSA.

2) NYLL Claims

Plaintiffs also allege that defendants violated the NYLL. The NYLL provides for a minimum wage and overtime scheme that is "largely similar" to that contained in the FLSA.

---

[3] See 29 U.S.C. § 213(a) setting forth the exemptions under the FLSA.

Man Wei Shiu v. New Peking Taste Inc., No. 11 CV 1175, 2014 WL 652355, at *10 (E.D.N.Y.
Feb. 19, 2014) (citing Rosas v. Subsational, No. 11 CV 2811, 2012 WL 4891595, at *4
(E.D.N.Y. Sept. 11, 2012), adopted, 2012 WL 4866678 (E.D.N.Y. Oct.15, 2012)).  Like the
FLSA, the NYLL requires employers to pay proper minimum wages and overtime rates
calculated at one-and-one-half times the employees' regular rate of pay for all hours worked in a
week over 40 hours.  See NYLL § 652; 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4; see, e.g., Charvac v.
M & T Proj. Mgrs. of N.Y., Inc., No. 12 CV 5637, 2015 WL 5475531, at *4-5 (E.D.N.Y. June
17, 2015); see also Chawdhury v. Hamza Exp. Food Corp., No. 14 CV 0150, 2015 WL 5541767,
at *4-5 (E.D.N.Y. Aug. 21, 2015), report and recommendation adopted by 2015 WL 5559873
(E.D.N.Y. Sept. 18, 2015).

Moreover, the NYLL requires employers to pay spread-of-hours premiums, see 12
N.Y.C.R.R. §§ 142-2.4, 146-1.6, and prohibits the type of tip sharing that was alleged in this
case.  See 12 N.Y.C.R.R. §§ 142-2.21, 146-2.2, 146-1.3.  In addition, the Wage Theft Prevention
Act, NYLL §§ 195(1) and 195(3), requires that employers provide employees with notices
regarding their wages at the time of their hiring and wage statements with each payment of
wages.

To recover under the NYLL, plaintiffs must prove that they are "employees" and that the
defendants are "employers" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d
403, 407 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant
achieve a certain minimum in annual sales or business to be subjected to the law.  See N.Y. Lab.
Law § 651(6) (defining employer as "any individual, partnership, association, corporation,
limited liability company, business trust, legal representative, or any organized group of persons
acting as [an] employer").  Similarly, an employee is simply defined as "any individual

employed or permitted to work by an employer in any occupation[.]"  N.Y. Lab. Law § 651(5).

In this case, plaintiffs' allegations that they were employed by defendants within the meaning of

the NYLL §§ 2 and 651 suffice to put them under the coverage of the NYLL.  (Compl. ¶¶ 51,

52).

Plaintiffs allege in the Complaint that defendants failed to pay them proper minimum

wages, spread-of-hours premiums, and overtime wages due to time shaving and by instituting an

unlawful tip-pooling scheme, and that the defendants failed to provide them with proper notices

under the Wage Theft Prevention Act.  (Compl. ¶¶ 52-58).  Accordingly, based on these

uncontested allegations, the Court respectfully recommends that plaintiffs be deemed to have

adequately alleged the elements necessary to state their claims under the NYLL.

C.  Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this

time, the Court finds that plaintiffs have sufficiently established liability under both the FLSA

and NYLL warranting entry of a default judgment.  See 29 U.S.C. § 207(a)(1).

Here, it is beyond dispute that defendants are in default.  Although it appears that

defendants were properly served with the Summons and Complaint, they failed to file an answer

or otherwise respond to the pleadings.  Moreover, the failure of the corporate defendants to

obtain counsel in this case constitutes a failure to defend because the corporate defendants, as

corporations, cannot proceed in federal court *pro se*.  See Jones v. Niagara Frontier Transp.

Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as

"artificial" entities, to appear through counsel only); see also Shapiro, Bernstein & Co. v.

Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled

law that a corporation cannot appear other than by its attorney").  Defendants also failed to

respond to plaintiff's request that default be entered, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's "default is crystal clear—it does not even oppose this motion"), and they did not submit papers in response to plaintiffs' motion for default judgment.  Thus, plaintiffs' claims and evidence of damages are undisputed.

Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay the case any further and finds that default is appropriate here.

D.  Liability of the Individual Defendants

Individuals may be held jointly and severally liable under the NYLL and the FLSA, if they meet the statutes' definitions of "employer."  Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).  As articulated above, the allegations demonstrate that individual defendants Cosme Aguilar, Luis Aguilar, and Winston Kulak were employers within the meaning of the NYLL and the FLSA, and thus, it is respectfully recommended that they be held jointly and severally liable with corporate defendants Café Henri and Casa Enrique, and that a default judgment enter against all defendants.

II.  Damages

A.  Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).  However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants can contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "While a default judgment constitutes an admission of

liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).

When a court enters a default judgment and the damages do not consist of a sum certain, the Federal Rules of Civil Procedure provide that "[t]he Court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]"  Fed. R. Civ. P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  Here, the plaintiffs have provided reasonably detailed affidavits in support of their request for damages.  Thus, the Court sees no reason to delay a determination of plaintiffs' damages.

B.  Damages Requested by Plaintiffs

1)  Unpaid Minimum Wages Under the FLSA and NYLL

Plaintiffs seek reimbursement for the unpaid minimum wages that they should have received pursuant to the NYLL and the FLSA.  (See Compl. ¶¶ 43, 44, 54, 55).  Under the NYLL, for the hours worked in New York City for large employers of 11 or more employees, the basic minimum hourly wage rate was $13 per hour for hours worked by plaintiffs on and after December 31, 2017, and $15 per hour for hours worked on and after December 31, 2018. N.Y. Lab. Law § 652(1)(a)(i).  Under the FLSA, the minimum wage in effect at the times alleged in the Complaint was $7.25 per hour.  29 U.S.C. § 206(a).

Both plaintiffs allege that defendants' tip-sharing scheme caused their actual wages to fall below the minimum wage. (Lee Decl. ¶¶ 20, 22, 24). Specifically, plaintiffs allege that they were never provided with the proper tip notice, and thus defendants were not entitled to factor in tip credits when determining plaintiffs' wages. (Compl. ¶¶ 17, 23, 31-32, 34, 54-55). Both the Complaint and the Lee Declaration state that Cuanetl's "tipped" rate was $10 an hour and Huertero's "tipped" rate was $14 an hour throughout plaintiffs' employment with defendants. (Id. ¶¶ 29(c), 30(c); Lee Decl. ¶¶ 14, 19, Exs. H, I). Plaintiffs have also testified to these wage rates. (Cuanetl Aff.[4] ¶ 3; Huertero Aff.[5] ¶ 3). These are also the rates that are listed in Exhibits H and I to the Lee Declaration and appear to be the rates used by plaintiffs in calculating their damages. Thus, it appears that these were the rates at which the plaintiffs were paid, inclusive of tips.

Plaintiffs have failed to identify what their hourly wage rate should have been if tips were not included in their wages and have calculated their damages based on their "tipped" wage rates. Accordingly, the Court has also calculated the plaintiffs' unpaid wages below using the wages listed in the Exhibits.[6]

    a) <u>Cuanetl's Minimum Wage Claims</u>

Plaintiff Cuanetl alleges that he was paid an hourly rate of $10 per hour for the entire duration of his employment with defendants from May 1, 2018 through January 2020. (Cuanetl Aff. ¶¶ 1-3; Lee Decl., Ex. H). Cuanetl further alleges that, during the relevant period,

---

[4] Citations to "Cuanetl Aff." refer to the Affidavit of Ernesto Cuanetl filed with the Court on December 23, 2021, ECF No. 21.

[5] Citations to "Huertero Aff." refer to the Affidavit of Francisco Huertero filed with the Court on December 23, 2021, ECF No. 22.

[6] Since the Court does not know what plaintiffs' rates would have been absent tips, the Court cannot compensate them for the alleged under-compensation caused by defendants' tip-sharing practices or their failure to provide tip-sharing notice.

defendants had more than 40 employees, and therefore, defendants were large employers under the NYLL.  (Compl. ¶ 21; N.Y. Lab. Law § 652(1)(a)(i)).  Since defendants' restaurants are located in Long Island City, in Queens County, plaintiffs "worked in the city of New York" and thus are entitled to New York City minimum wages under the NYLL.  N.Y. Lab. Law § 652(1)(a)(i).  Accordingly, under the NYLL, Cuanetl was entitled to an hourly wage rate of $13 per hour for his work in 2018, and an hourly wage rate of $15 per hour for all of his work thereafter.  Since the minimum wage rate specified in the NYLL is higher than the rate that Cuanetl received, he is entitled to damages for unpaid minimum wages under the NYLL. Charvac v. M & T Project Managers of New York, Inc., 2015 WL 5475531, at *4.

Under the FLSA, the minimum wage rate for the entirety of Cuanetl's employment was $7.25.  29 U.S.C. § 206(a).  Cuanetl's wages thus exceeded the minimum wage under the FLSA, and he is therefore not entitled to relief for unpaid minimum wages under that statute.

Cuanetl alleges that he was scheduled to work five (5) days per week from 4:00 p.m. to 12:00 a.m., for a total of 40 hours per week.  (Cuanetl Aff. ¶ 2).  Since he worked for defendants from May 1 through December 31 2018 (id. ¶ 1; Lee Decl., Ex. H), and thus worked for a total of 35 weeks in 2018, under the NYLL, Cuanetl is owed $4,200 in unpaid minimum wages for his work in 2018.  This figure represents $3 per hour (the difference between his alleged wage rate of $10 per hour and the $13 minimum wage rate in effect at the time under the NYLL), times 40 scheduled hours per week, times 35 weeks.  (Lee Decl., Ex. H).

Cuanetl worked for defendants for the entirety of 2019.  Thus, he worked exactly 52 weeks and one (1) day, or 52.14 weeks, which is the total number of weeks and days that elapsed that year.  Thus, for his work in 2019, Cuanetl is owed $10,428, representing $5 per hour (the difference between his alleged $10 per hour wage rate and the $15 minimum wage rate in effect

at the time under the NYLL), times 40 scheduled hours per week, times 52.14 weeks.  Plaintiffs erroneously calculates that Cuanetl is entitled to $10,428.57 for this period, which, despite apparently using the same numbers to perform this calculation as the Court, is $.57 over the amount actually owed.  (Id.)  Accordingly, the Court respectfully recommends that Cuanetl's award for minimum wages in 2019 be limited to $10,428.00.

Cuanetl only worked for defendants for the month of January in 2020, which was exactly four (4) weeks and three (3) days, or 4.43 weeks.  (Cuanetl Aff. ¶ 1; Lee Decl., Ex. H).  Thus, for his work in 2020, Cuanetl is owed an additional $886, representing $5 per hour (the difference between his alleged $10 an hour wage rate and the $15 minimum wage rate in effect at the time under the NYLL), times 40 scheduled hours per week, times 4.43 weeks.  However, Cuantel only asks for $885.71 for this period (id.), and so his award should be limited accordingly.

The Court respectfully recommends that Cuanetl be awarded $15,513.79 in unpaid minimum wages as follows:

| | |
|---|---|
| 2018 | $4,200 |
| 2019 | $10,428 |
| 2020 | $885.79 |

TOTAL: $15,513.79

b) Huertero's Minimum Wage Claims

Plaintiff Huertero alleges that he was paid a wage of $14 an hour for the entire duration of his employment with defendants from March 2019 through November 2019.  (Huertero Aff. ¶¶ 1, 3).  Under the NYLL, Huertero was entitled to an hourly wage rate of $15 per hour for the entirety of his employment with defendants.  N.Y. Lab. Law § 652(1)(a)(i).  Defendants therefore paid  Huertero $1 less than the minimum wage rate in effectunder the NYLL.

14

However, as with Cuanetl, Huertero's wages exceeded the FLSA's minimum wage rate of $7.25 per hour, and thus he is not entitled to relief under that statute for unpaid minimum wages.

Huertero alleges that he worked five (5) days per week, from 4:00 p.m. to 12:00 a.m. for three (3) of these days, and from 9:00 a.m. to 1:30 a.m. for the other two (2) days, for a total of 57 hours per week. (Huertero Aff. ¶¶ 1, 2). Looking only to the first 40 hours worked in a week, Huertero is entitled to recover the difference between the amount that he was paid and the minimum wage of $15 per hour in effect under the NYLL during his period of employment. (Lee Decl., Ex. I).

Plaintiffs determine Huertero's unpaid minimum wages by calculating that he was owed compensation for a total of 43.71 weeks, which is the number of weeks that elapsed from March 1, 2019 through December 31, 2019. (Id.) However, Huertero only claimed to have worked until "in or around" November 2019. (Huertero Aff. ¶ 1). Thus, if Huertero worked for defendants for the entire month of November 2019, which is the maximum duration of his employment supported by his affidavit, then he worked for defendants for only 39.3 weeks. Therefore, Huertero is owed $1,572 in unpaid minimum wages, representing $1 per hour (the difference between his alleged wage rate of $14 per hour and the $15 minimum wage rate in effect at the time under the NYLL), times 40 scheduled hours per week, times 39.3 weeks.

The Court respectfully recommends that Huertero be awarded $1,572 in unpaid minimum wages.

   2) <u>Unpaid Overtime Wages Under the FLSA and NYLL</u>

Plaintiffs also seek reimbursement for unpaid overtime wages under both the FLSA and the NYLL. (See Compl. ¶¶ 49, 59).

a) <u>Cuanetl's Overtime Wage Claims</u>

To calculate Cuanetl's entitlement to unpaid overtime compensation, the Court must first determine Cuanetl's regular hourly pay rate. Pursuant to the FLSA, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 hours per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). "Under the FLSA, the 'regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked[.]'" <u>Pineda v. Frisolino, Inc.</u>, No. 15 CV 3774, 2017 WL 3835882, at \*10 (S.D.N.Y. Aug. 29, 2017) (quoting 29 C.F.R. § 788.109). The regular rate of the employee as defined in the FLSA, however, "cannot be lower than" the applicable minimum wage. 29 C.F.R. § 778.5; <u>Martinez v. Alimentos Saludables Corp.</u>, No. 16 CV 1997, 2017 WL 5033650, at \*15 (E.D.N.Y. Sept. 22, 2017). Thus, under the FLSA, overtime pay should be calculated based on the employee's usual wage or the statutory minimum wage, "whichever is greater." <u>Martinez v. Alimentos Saludables Corp.</u>, 2017 WL 5033650, at \*16 (citing 29 U.S.C. § 207; 29 C.F.R. § 778.107).

Under the NYLL, an employee is entitled to one-and-one-half their regular rate of pay for hours worked in excess of 40 hours in one workweek. 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4. The regular rate under the NYLL is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5. As with the FLSA, under the NYLL, courts calculate an employee's overtime rate using the statutory minimum wage if the employee's pay falls below the minimum wage rate. <u>Rosendo v.</u>

Everbrighten Inc., No. 13 CV 7256, 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), report and recommendation adopted, No. 13 CV 7256, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

Plaintiffs who have proven that they were not paid the proper wages under both the FLSA and the NYLL "are not entitled to recover twice for the same injury." Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), report and recommendation adopted as modified, No. 12 CV 5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (internal quotation marks and citations omitted); Llolla v. Karen Gardens Apartment Corp., No. 12 CV 1356, 2014 WL 1310311, at *11 (E.D.N.Y. Mar. 10, 2014), report and recommendation adopted as modified, No. 12 CV 1356, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014). See also Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (holding that "[a]lthough plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor [L]aw, they may not recover twice"). Thus, plaintiffs seeking to collect unpaid overtime pay under both the FLSA and the NYLL "may recover under whichever statute provides the greater relief." Pineda v. Frisolino, Inc., 2017 WL 3835882, at *11 (citations omitted).

In this case, the NYLL allows for the greater recovery for Cuanetl because Cuanetl's pay of $10 per hour exceeded the minimum wage rate under the FLSA, which was $7.25 throughout his employment, but not the NYLL, which established a minimum wage of $13 an hour in 2018 and $15 an hour from 2019 onward. Thus, his overtime rate per hour under the FLSA would necessarily be lower than his rates under the NYLL for each year of his employment with defendants, and he is therefore entitled to recover the higher award under the NYLL.

Plaintiffs claim that Cuanetl's proper overtime hourly rate for 2018 was $19.50 per hour. (Lee Decl., Ex. H). This number reflects the product of the minimum wage in effect under the

NYLL in 2018—$13 per hour—and 1.5, to produce the applicable statutory overtime rate. The Court finds that this number is correct. For 2019 and 2020, plaintiffs claim that Cuanetl's proper overtime hourly rate was $22.50 per hour. This number reflects the product of the minimum wage for 2019 and 2020 under the NYLL, which was $15 per hour, and 1.5. The Court finds that this number is also correct.

Using these overtime rates, plaintiff Cuanetl seeks overtime wages in the total amount of $9,776.79 for the hours worked from May 1, 2018 through January 31, 2020. (Lee Decl., Ex. H). Specifically, Cuanetl alleges that each day during the five days a week that he worked throughout his employment, he was "required" to come into work approximately 30 minutes early and stay approximately 15 to 30 minutes past his scheduled shift to perform non-tipped activities. (Cuanetl Aff. ¶ 4). This work was in addition to his regularly scheduled 40-hour workweek. (Id.) Thus, according to plaintiffs' counsel, Cuanetl worked approximately five (5) hours of time-shaved overtime per week during his employment with defendants. (Lee Decl., Ex. H). Cuanetl alleges that he was not compensated at all for this additional time. (Cuanetl Aff. ¶¶ 4-5).

While the Court agrees that Cuanetl is entitled to overtime wages for time-shaved overtime, the Court disagrees with plaintiffs' contention that Cuanetl worked approximately five (5) hours of time-shaved overtime per week. Given plaintiff's testimony that he regularly worked approximately 30 minutes before his scheduled shift and approximately 15 to 30 minutes after it, the Court finds that Cuanetl's time-shaved overtime damages should be calculated under the assumption that he worked 4.375 hours per week of time-shaved overtime, not five (5) hours. (Cuanetl Aff. ¶ 4). This figure represents an even split between the days Cuanetl worked 45

minutes of time-shaved overtime and the days that he worked an hour of time-shaved overtime, and thus is more consistent with his testimony.

Plaintiffs have calculated that Cuanetl is owed $3,412 in overtime wages for 2018.  (Lee Decl., Ex. H).  They arrive at this amount by multiplying the number of time-shaved overtime hours Cuanetl allegedly worked each week—five (5) hours—by the proper overtime pay rate, $19.50 per hour, and then multiplying this product by the number of weeks Cuanetl worked in 2018, which plaintiffs assert was 35 weeks, representing the time that elapsed from May 1 through December 31, 2018. (Id.)  As discussed above, the Court finds that based on his own testimony, Cuanetl actually worked for 4.375 hours of overtime per week, not five (5) hours.  In light of this adjustment, the Court finds that Cuanetl is owed $2,985.94 for unpaid overtime wages in 2018, representing 4.375 hours worked per week for 35 weeks at a rate of $19.50 per hour.

For 2019, plaintiffs calculate that Cuanetl is owed $5,866.07 in overtime wages.  (Id.)  In arriving at this figure, plaintiffs multiplied the five (5) hours of uncompensated overtime that plaintiffs assert that Cuanetl worked each week by the proper overtime pay rate, $22.50 per hour, and then multiplied this amount by the number of weeks that Cuanetl worked in 2019, which was 52.14 weeks.  (Id.)  Again, the Court agrees with plaintiffs' method of calculation but disagrees with the number of weekly overtime hours.  Factoring in the proper amount of weekly overtime—4.375 hours—the Court finds that Cuanetl is owed $5,132.53 for unpaid overtime wages in 2019, representing his having worked 4.375 hours per week at a rate of $22.50 per hour for 52.14 weeks.

For 2020, plaintiffs have calculated that Cuanetl is owed $498.21 in overtime wages. (Id.)  In arriving at this figure, plaintiffs again calculated the amount of overtime based on five

(5) hours, instead of the 4.375 hours per week, which this Court finds is more consistent with Cuanetl's testimony.  Since Cuanetl worked a total of 4.43 weeks in the year 2020, and factoring in the proper number of overtime hours that Cuanetl worked per week, which was 4.375 hours, the Court finds that Cuanetl is owed $436.08 for unpaid overtime wages in 2020, representing his having worked for 4.375 hours per week for 4.43 weeks at a rate of $22.50 per hour.

In light of the above, the Court respectfully recommends that Cuanetl be awarded $8,554.37 in unpaid overtime wages as follows:

| | |
|---|---|
| 2018 | $2,985.94 |
| 2019 | $5,132.35 |
| 2020 | $436.08 |
| | TOTAL: $8,554.37 |

b)  Huertero's Overtime Wage Claims

Huertero claims to have worked 57 hours per week and to have received $14 per hour in wages for the entirety of his employment with defendants.  (Huertero Aff. ¶¶ 2, 3).  Thus, as with Cuanetl, the NYLL affords Huertero greater recovery than the FLSA.  This flows from the fact that, Huertero's wages of $14 per hour were less than the minimum wage rate of $15 per hour under the NYLL, but exceeded the minimum wage rate of $7.25 per hour under the FLSA. Thus, his overtime rate was necessarily higher under the NYLL than under the FLSA.

Plaintiff Huertero seeks overtime wages in the amount of $24,097.50, representing $7,376.79 of time-shaved overtime and $16,720.71 of scheduled overtime.  (Lee Decl., Ex. H).

Throughout his employment, Huertero alleges that he was "required" to come into work approximately 30 minutes early and stay approximately 30 to 60 minutes past his scheduled shift to perform non-tipped activities.  (Huertero Aff. ¶ 4).  Huertero claims to have worked five (5)

20

days per week.  (Id. ¶ 2).  Thus, according to plaintiffs' counsel, during his employment with defendants, Huertero worked approximately 7.5 hours of time-shaved overtime in addition to his regularly scheduled hours per week.  (Lee Decl., Ex. H).

As was the case with respect to Cuanetl, the Court disagrees with plaintiff's contention that Huertero worked 7.5 hours of time-shaved overtime per week.  Given plaintiff's testimony that he regularly worked approximately 30 minutes before his scheduled shift and then between approximately 30 and 60 minutes after it, the Court finds that it is more consistent with his testimony to award Huertero for  6.25 hours per week of time-shaved overtime, not 7.5 hours. (Huertero Aff. ¶¶ 4, 6).  This figure represents an even split as to the days Huertero worked one hour of time-shaved overtime and the days that he worked one-and-a-half hours of time-shaved overtime, and thus better accords with his testimony.

Plaintiffs claim that Huertero's proper overtime hourly rate for 2019 was $22.50 per hour.  (Lee Decl., Ex. H).  This number reflects the product of the minimum wage for 2019 under the NYLL, $15 per hour, and 1.5, the applicable overtime modifier.  The Court finds that this number is correct.

Plaintiffs calculate that Huertero is owed $7,376.79 in time-shaved overtime wages.  (Lee Decl., Ex. H).  They arrive at this amount by multiplying the number of time-shaved overtime hours that Huertero alleges to have worked each week, 7.5 hours, by his overtime pay rate, $22.50 per hour, and then multiplying this product by the number of weeks Huertero worked in 2019, which plaintiffs claim was 43.71 weeks.  (Lee Decl., Ex. H).  The Court agrees with this method of calculation but not with the number of overtime hours worked each week or the number of weeks worked.

Huertero claims to have worked from March 2019 until "in or around" November 2019, but, again, his affidavit indicates that, at most, he worked through November but not into December, and therefore only worked for at most 39.3 weeks that year.  (Huertero Aff. ¶ 1).  In addition, as previously explained, Huertero worked 6.25 hours of time-shaved overtime per week, not 7.5 hours.  Using the correct figures, the Court finds that Huertero is owed $5,526.56 for time-shaved overtime in 2019, representing his having worked for 6.25 hours per week at a rate of $22.50 per hour for a total of 39.3 weeks.

In addition to the overtime hours that Huertero claims to have worked due to defendants' time-shaving policies, Huertero also alleges that he worked scheduled overtime.  (Huertero Aff. ¶ 2).  Huertero claims that he "did not receive any overtime compensation at one-and-one-half times [his] regular rate" for the overtime hours that he worked each week.  (Id. ¶ 6).  Based on Huertero's allegation that he worked 57 scheduled hours per week, he was entitled to overtime wages for 17 hours per week for the duration of his employment with defendants.  (Id. ¶ 2).

Plaintiffs seek a total of $16,720.71 in unpaid overtime wages for Huertero's scheduled overtime in 2019.  (Lee Decl., Ex. I).  Plaintiffs arrive at this figure by multiplying $22.50 an hour (the proper overtime rate), by 17 hours per week (the number of hours that Huertero claims to have worked over 40 hours each week), by 43.71 weeks (which is the total number of weeks Huertero purportedly worked in 2019).  (Lee Decl., Ex. I).

This calculation errs in two ways.  First, as noted *supra*, plaintiff's damage calculations rely on Huertero working 43.71 weeks in 2019, but according to his affidavit, he only worked for, at most, 39.3 weeks that year.  (Huertero Aff. ¶ 1).  Second, nothing in either Huertero's testimony or plaintiff's Complaint indicates that Huertero was not paid at all for the 17 hours of overtime that he claims to have worked each week, yet by seeking compensation at $22.50 per

22

hour, plaintiff's damage calculations proceed on the assumption that his paid rate for these 17 hours was $0.  (Id.).  Instead, based on Huertero's testimony, he worked 57 hours per week without receiving "any overtime compensation at one-and-one-half times [his] regular rate." (Huertero Aff. ¶ 6).  The only time that Huertero explicitly identifies as time that he worked without receiving any pay is the time-shaved overtime.  (See id. ¶ 4).  Thus, the Court finds that, based on Huertero's affidavit, Huertero was paid at his normal rate of $14 per hour for the 17 hours of regularly scheduled overtime that he worked.

Taking this into account, the Court finds that Huertero is entitled to an additional $8.50 per hour for every hour of regularly scheduled overtime that he worked. The $8.50 represents the difference between the $14 per hour that he was paid and the proper overtime rate of $22.50. Using these adjustments, the Court finds that Huertero is entitled to recover $5,678.85 in unpaid scheduled overtime wages, representing his having worked 17 hours of scheduled overtime per week, times $8.50 owed per hour, times the adjusted number of weeks worked in 2019—39.3.

Therefore, adding together the overtime amounts owed for both scheduled overtime and time-shaved overtime, the Court respectfully recommends that Huertero be awarded $11,205.41 in unpaid overtime wages as follows.

|  |  |
|---|---|
| 2019 (Time-shaved OT) | $5,526.56 |
| 2019 (Scheduled OT) | $5,678.85 |
| TOTAL: $11,205.41 | |

### 3)  Unpaid Spread-of-Hours Premiums Under the NYLL

Under the NYLL, an employer is required to provide "one hour's pay at the basic minimum hourly wage rate" in addition to the employee's daily wages on days in which the employee's workday spans more than 10 hours.  12 N.Y.C.R.R. § 146-1.6(a).

a)  <u>Cuanetl's Spread-of-Hours Premiums Claim</u>

In this case, plaintiff Cuanetl alleges that, throughout his employment for defendants, he was scheduled to work more than 10 hours a day twice a month.  (Cuanetl Aff. ¶ 6).  Cuanetl alleges that he did not receive any spread-of-hours premiums for these days.  (<u>Id.</u>)

Plaintiffs have calculated that Cuanetl is owed $227.50 in spread-of-hour premium damages for 2018.  (Lee Decl., Ex. H).  They arrive at this amount by taking the number of days in which Cuanetl worked more than 10 hours per week in 2018, which they claim was .5 days, and multiplying that number by the applicable minimum wage rate, $13 per hour, and then multiplying this product by the number of weeks Cuanetl worked in 2018, which plaintiffs claim was 35 weeks.  (<u>Id.</u>)

The Court disagrees with plaintiffs' calculation.  Cuanetl's spread-of-hour pay should not be calculated using the number of weeks that he worked in a given period.  Rather, given that Cuanetl claimed to have worked more than 10 hours a day twice a <u>month</u>, his spread-of-hours pay should be calculated using the number of months, as opposed to the number of weeks, that elapsed in each period for which he claims spread-of-hours compensation.  Eight (8) months elapsed between May 1 and December 31, 2018.  As such, Cuanetl is entitled to $208 in unpaid spread-of-hour premiums for 2018, representing his having worked more than 10 hours twice a month for eight (8) months, at a wage rate of $13 per hour.

For 2019, plaintiffs claim that Cuanetl is owed $391.07[7] in spread-of hours premiums. They again arrive at this amount by taking the number of days in which Cuanetl worked more than 10 hours per day per week in 2019, which plaintiffs claim was .5 days, and multiplying that

---

[7] Using plaintiffs' figures, the correct number would be $391.05, not $391.07.  However, as noted, the Court disagrees with plaintiffs' methodology which improperly inflates his spread-of-hours award.

number by the applicable minimum wage rate, $15 per hour, and then multiplying this product

by the number of weeks Cuanetl worked in 2019, which he claims was 52.14 weeks.  (Lee Decl.,

Ex. H).

Again, the Court finds that plaintiffs' numbers overstate Cuanetl's spread-of-hours pay

by using the number of weeks that Cuanetl worked in 2019 instead of calculating his spread-of-

hours premiums on a monthly basis which is more consistent with his testimony.  Since 12

months elapsed from January 1 through December 31, 2019, Cuanetl is entitled to $360 in

spread-of-hours compensation for 2019, representing his having worked more than 10 hours a

day, twice a month for 12 months, at a wage of $15 per hour.

For 2020, plaintiffs have calculated that Cuanetl is owed $33.21[8] in spread-of-hours

premium damages.  They arrive at this amount by taking the number of days that Cuanetl worked

more than 10 hours per week in 2020, which, again, they assume was .5 days, and multiplying

that number by the applicable minimum wage rate, $15 per hour, and then multiplying this

product by the number of weeks that Cuanetl claims to have worked in 2020, which was 4.43

weeks.  (Lee Decl., Ex. H).  As set forth above, the Court finds that plaintiffs' method of

calculation results in a higher award than that supported by his own statements.  Since Cuanetl

only worked for a single month in 2020, during which time he claims to have worked two days

exceeding 10 hours, he would only be entitled to an additional $15 for each of those two days or

a total of $30 in spread-of-hours pay for 2020.

Therefore, the Court respectfully recommends that Cuanetl be awarded $598 in unpaid

spread-of-hours premiums as follows.

---

[8] Again, plaintiffs' calculations differ slightly from that of the Court, with the Court determining that for 2020, using plaintiffs' figures, Cuanetl would be owed $33.23, not $33.21 as proposed by plaintiffs.  Since the Court finds that calculating the spread-of-hours amount should be done on a twice monthly basis, this mathematical difference is ultimately irrelevant.

| | |
|---|---|
| 2018 | $208 |
| 2019 | $360 |
| 2020 | $30 |
| | TOTAL: $598 |

### b)  Huertero's Spread-of-Hours Premiums

Huertero alleges that, throughout his employment with defendants, he "regularly" had workdays exceeding 10 hours in duration.  (Huertero Aff. ¶¶ 2, 5).  Specifically, Huertero claims to have worked five (5) days a week and to have worked eight (8) hour shifts three (3) days a week and 16-and-a-half hour shifts the remaining two (2) days a week.  (Id. ¶ 2).  Huertero further alleges that he did not receive any spread-of-hours premiums for the days during which he worked more than 10 hours.  (Id.)

Plaintiffs have calculated that Huertero is owed $1,967.14 in spread-of-hours premiums for 2019.  (Lee Decl., Ex. I).  They arrive at this amount by multiplying the number of days that Huertero allegedly worked for more than 10 hours in each week in 2019, which they assert was three (3) days, by the applicable minimum wage rate, $15 per hour, and then multiplying this product by the number of weeks Huertero worked in 2018, which plaintiffs claim was 43.71 weeks.  (Lee Decl., Ex. I).

Again, plaintiffs incorrectly calculate the number of weeks Huertero worked.  According to his affidavit, he worked for, at most, 39.3 weeks, not 43.71 weeks.  (Huertero Aff. ¶ 1).  Moreover, plaintiffs err with respect to the number of days per week that Huertero worked more than 10 hours.  While plaintiffs' calculations are predicated on Huertero working for more than 10 hours for three (3) days per week, Huertero's affidavit indicates that he only did so for two (2) days per week.  (Huertero Aff. ¶ 2).

26

Thus, based on Huertero's affidavit, he is owed $1,179 in spread-of-hour premiums, representing $15 per hour (the applicable minimum wage rate), times two (2) (the number of days that Huertero worked more than 10 hours in each week in 2019), times 39.3 weeks. Therefore, the Court respectfully recommends that Huertero be awarded $1,179 in unpaid spread-of-hour premiums.

4)  Liquidated Damages under the FLSA and NYLL

Plaintiffs also seek liquidated damages for the defendants' wage violations pursuant to the FLSA and NYLL.  (Compl. ¶¶ 49, 59).

The FLSA and NYLL provide for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  29 U.S.C. § 216(b); NYLL §§ 198(1-a) and 663(1).  Although plaintiffs have proven that they were not paid the proper wages under both the FLSA and the NYLL, and thus are technically entitled to liquidated damages under both statutes, plaintiffs "are not entitled to recover twice for the same injury." Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), report and recommendation adopted as modified, No. 12 CV 5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (internal quotation marks and citations omitted); Llolla v. Karen Gardens Apartment Corp., No. 12 CV 1356, 2014 WL 1310311, at *11 (E.D.N.Y. Mar. 10, 2014), report and recommendation adopted as modified, No. 12 CV 1356, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014);  Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010).  Thus, having established wage violations under both laws, plaintiffs "may recover under the statute which provides the greatest amount of damages[.]"  Charvac v. M & T Project Managers of New York, Inc., 2015

WL 5475531, at *4 (quoting <u>Jiao v. Shi Ya Chen</u>, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)).

Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful.  N.Y. Lab. Law § 663(1) (1967).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer.  <u>Hengjin Sun v. China 1221, Inc.</u>, No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting <u>Galeana v. Lemongrass on Broadway Corp.</u>, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under both the FLSA and the NYLL, the employer now bears the burden of proving good faith and reasonableness.

Under the NYLL's liquidated damages provision, "courts have not substantively distinguished the federal standard from the current state standard of good faith."  <u>Inclan v. New York Hosp. Grp., Inc.</u>, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing <u>He v. Home on 8th Corp.</u>, No. 09 CV 5630, 2014 WL 3974670, at *7 n. 19 (S.D.N.Y. Aug. 13, 2014); <u>Eschmann v. White Plains Crane Serv., Inc.</u>, No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014)).  Accordingly, the employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception."  <u>Gortat v. Capala Bros.</u>, 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 142 (2d Cir. 1999)) (awarding 100% liquidated damages under the FLSA standard).

Since the defendants have chosen not to appear in this action and have not established that they had a good faith basis to believe that their underpayment of wages complied with the NYLL or the FLSA, the Court respectfully recommends that plaintiffs be awarded liquidated damages. <u>See</u> <u>Xi Qun Xu v. JNP Bus Serv. Inc.</u>, No. 16 CV 245, 2018 WL 1525799, at *9

(E.D.N.Y. Feb. 26, 2018), report and recommendation adopted in part, rejected in part on other grounds, No. 16 CV 0245, 2018 WL 1525662 (E.D.N.Y. Mar. 28, 2018) (recommending the award of liquidated damages under the NYLL for overtime wages, minimum wages, and spread-of-hours premiums).

While the plaintiffs have evinced violations of the FLSA with respect to overtime wages, plaintiffs have also shown minimum wage and overtime violations under the NYLL as well as entitlement to spread-of-hour compensation. Since plaintiffs stand to recover more under the NYLL than under the FLSA, the NYLL governs plaintiffs' recovery of liquidated damages. Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4. Accordingly, the Court respectfully recommends that plaintiffs be awarded liquidated damages in an amount equal to 100% of the sum of the overtime wages, minimum wages, and spread-of-hours premiums owed to each plaintiff under the NYLL.

a) Cuanetl Liquidated Damages

It is respectfully recommended that plaintiff Cuanetl be awarded liquidated damages in the amount of $24,666.16, representing the sum of $15,513.79 in liquidated damages for defendants' minimum wage violations, $8,554.37 in liquidated damages for defendants' overtime violations, and $598 in liquidated damages for defendants' spread-of-hours violations.

b) Huertero Liquidated Damages

Similarly, it is respectfully recommended that plaintiff Huertero be awarded liquidated damages in the amount of $13,956.41, representing the sum of $1,572 in liquidated damages for defendants' minimum wage violations, $11,205.41 in liquidated damages for defendants' overtime violations, and $1,179 in liquidated damages for defendants' spread-of-hours violations.

5) <u>Wage Statement and Wage Notice Violations</u>

Under the NYLL, employers are required to give each employee a notice of their rate of pay at the time of hiring.  NYLL § 195(1)(a).  This notice must contain the rate or rates of pay, whether the employee was to be paid by the hour, shift, day, or week, any allowances claimed as part of the minimum wage, the regular pay day, the name of the employer, the physical address of the employer's main office, and the employer's telephone number in both English and the employee's primary language, if different from English.  <u>Id.</u>  A plaintiff may recover $50 for each workday during which the employer failed to provide this notice, not to exceed $5,000.  <u>See</u> <u>Cabrera v. 1560 Chirp Corp.</u>, No. 15 CV 8194, 2017 WL 1289349, at *7 (S.D.N.Y. Mar. 6, 2017) (citing 2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198(1-b)).

Also, under the NYLL, employers are required to give each employee a wage statement listing specific information with each paycheck.  <u>See</u> NYLL § 195(3).  If an employer fails to provide an employee with a pay stub, the employee may recover $250 for each workday for which the employer fails to give this notice up to a total of $5,000.  <u>See</u> <u>Cabrera v. 1560 Chirp Corp.</u>, 2017 WL 1289349, at *6 (citing 2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198(1-d)).

Plaintiffs allege that they were never provided with notices complaint with NYLL § 195(1).  (Compl. ¶ 58; Cuanetl Aff. ¶ 7; Huertero Aff. ¶ 7).  Moreover, plaintiffs assert that they never received wage statements that complied with NYLL § 195(3).  (Compl. ¶ 57; Cuanetl Aff. ¶ 8; Huertero Aff. ¶ 8).  Plaintiffs allege that the wage statements that they did receive were deficient insofar as their tip credit allowance was never clearly included in the wage statements and the statements also failed to accurately reflect the number of hours that they worked. (Compl. ¶ 57; Cuanetl Aff. ¶ 8; Huertero Aff. ¶ 8).

a)  <u>Cuanetl Wage Statement and Wage Notice Violations</u>

Plaintiff Cuanetl alleges that he began working for the defendants on approximately May 1, 2018 and worked through January 31, 2020 for a total of 641 days.  (Cuanetl Aff. ¶ 6; Lee Decl., Ex. H).  A penalty of $50 for each day worked without a wage notice and $250 for each day worked without a wage statement would thus exceed the $5,000 statutory cap for violations of both NYLL §§ 195(1) and (3).  NYLL §§ 198(1-b), (1-d).  Accordingly, it is respectfully recommended that Cuanetl receive $5,000 for the defendants' violation of NYLL § 195(1), and $5,000 for the defendants' violation of NYLL § 195(3), for a total of $10,000.

b)  <u>Huertero Wage Statement and Wage Notice Violations</u>

Plaintiff Huertero claims to have worked for the defendants from approximately March 1 through December 31, 2019 for a total of 306 days.  (Huertero Aff. ¶ 1).  Thus, his damages exceed the $5,000 statutory caps for violations of both NYLL §§ 195(1) and (3) as well.  NYLL §§ 198(1-b), (1-d).  Accordingly, it is respectfully recommended that Huertero receive $5,000 for the defendants' violation of NYLL § 195(1) and $5,000 for their violation of NYLL § 195(3), for a total of $10,000.

6)  <u>Pre-Judgment Interest and Attorney's Fees and Costs</u>

Under New York law, plaintiffs are entitled to interest on all wages awarded, calculated at a rate of 9% per annum.  <u>See</u> N.Y.C.P.L.R. § 5004.  Pre-judgment interest is not available under the FLSA because the federal statute does not allow an employee to recover "prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages," since liquidated damages under the FLSA "are considered compensatory in nature and thus serve as a form of pre-judgment interest."  <u>Yuquilema v. Manhattan's Hero Corp.</u>, No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and quotation marks

omitted), report and recommendation adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); Yu

G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d at 261.  However, the Second Circuit has held that, as

liquidated damages and prejudgment interest are not functional equivalents under the NYLL,

prevailing plaintiffs may recover prejudgment interest for judgments rendered under the NYLL.

Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).[9]

In this case, since the Court did not award plaintiffs damages on their FLSA claims,[10]

there is no impediment to awarding liquidated damages and interest on plaintiff's NYLL claims.

Accordingly, plaintiffs are entitled to pre-judgment interest on their unpaid minimum wage,

overtime, and spread-of-hours pay.  However, while plaintiffs requested an award of

prejudgment interest in the Complaint (Compl. at 19), plaintiffs have not requested prejudgment

interest in the instant submissions and thus have failed to provide a calculation of the

prejudgment interest to which they are entitled.  (ECF No. 23; Lee Decl., Ex. J).  As such, the

Court is not in a position to award plaintiffs prejudgment interest.

Moreover, both the FLSA and NYLL allow for an award of attorney's fees.  See 29

U.S.C. § 216(b); N.Y. Lab. Law §§ 198(4), 663(1); Khalil v. Original Old Homestead Rest., Inc.,

657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (providing that the court in an FLSA action "shall, in

addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee

---

[9] Where plaintiffs receive damages under both the FLSA and the NYLL, prejudgment interest only accrues on those parts of the award for which liquidated damages are not awarded under the FLSA.  Yuquilema v. Manhattan's Hero Corp., 2014 WL 4207106, at *11; Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d at 261.  Further, pre-judgment interest may not be awarded under the NYLL in addition to liquidated damages that are awarded for violations of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011); Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 92-93 (E.D.N.Y. 2012); see also Hengjin Sun v. China, 2016 WL 1587242, at *5-6 (citing cases and holding that plaintiffs are entitled to pre-judgment interest on their non-overlapping NYLL wage claims at a simple rate of 9% per year).  Since the Court has not recommended an award of damages under the FLSA, this limitation on pre-judgment interest does not apply.

[10] Although the plaintiff established that defendants violated both the FLSA and NYLL, the Court only recommends an award of damages and liquidated damages under the NYLL.

to be paid by the defendant, and costs of the action"); see, e.g., Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013).  However, although plaintiffs requested attorney's fees in the Complaint (Compl. ¶ 59), they have failed to request or calculate an award for attorney's fees and costs in the instant submissions.  (ECF No. 23; Lee Decl., Ex. J).

Thus, the Court respectfully recommends that plaintiffs be allowed to supplement their default judgment motion with calculations detailing their entitlement to prejudgment interest, attorney's fees, and costs within 30 days from the filing of this Report and Recommendation.

7)  Post-Judgment Interest

Additionally, the Court respectfully recommends that plaintiffs are entitled to post-judgment interest under 28 U.S.C. § 1961(a).  Under Section 1961(a), interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  28 U.S.C. § 1961(a).  The Second Circuit has held that post-judgment interest is mandatory on all awards in civil cases as of the date judgment is entered.  Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996).  Accordingly, it is respectfully recommended that plaintiff be awarded post-judgment interest at the statutory rate, as calculated by the Clerk of Court, to the extent that any accrues after entry of judgment.

III.   Damages Chart

| Plaintiff | Minimum Wages | Overtime Wages | Spread-of-Hours Premiums | Liquidated Damages | Wage Statement Penalty | Total |
|---|---|---|---|---|---|---|
| Cuanetl | $15,513.79 | $8,554.37 | $598 | $24,666.16 | $10,000 | $59,332.32 |
| Huertero | $1,572 | $11,205.41 | $1,179 | $13,956.41 | $10,000 | $37,912.82 |

TOTAL: $97,245.14

<u>CONCLUSION</u>

The Court respectfully recommends that plaintiffs' motion for entry of a default judgment be granted, and that plaintiffs be awarded $97,245.14 in damages as follows:  Plaintiff Cuanetl should be awarded (1) $15,513.79 for unpaid minimum wages; (2) $8,554.37 for unpaid overtime wages; (3) $598 in spread-of-hours premiums; (4) $24,666.16 for liquidated damages; and (5) $10,000 for wage statement and notice penalties.  Plaintiff Huertero should be awarded (1) $1,572 for unpaid minimum wages; (2) $11,205.41 for unpaid overtime wages; (3) $1,179 in spread-of-hours premiums; (4) $13,956.41 for liquidated damages; and (5) $10,000 for wage statement and notice penalties.

Additionally, the Court respectfully recommends that plaintiffs are entitled to prejudgment interest and reasonable attorney's fees and costs, and that plaintiffs be allowed to supplement their submission to calculate and evince prejudgment interest and attorney's fees and costs within 30 days from the filing of this Report and Recommendation.  The Court further respectfully recommends that plaintiffs are entitled to post-judgment interest, should any accrue, and that defendants are jointly and severally liable for the judgment.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

34

Plaintiffs are directed to serve this Report and Recommendation on the defendants and provide evidence on the docket of doing so through the Electronic Case Filing (ECF) system immediately.  The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through ECF system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 9, 2022

                                    /s/ Cheryl L. Pollak
                                    Cheryl L. Pollak
                                    Chief United States Magistrate Judge
                                    Eastern District of New York